# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TYRELL HILL, #420-407, | * |
| Plaintiff, | * |
| v. | *  Civil Action No. PWG-17-1994 |
| STEPHEN T. MOYER, RICHARD GRAHAM, RICHARD RODERICK and BENJAMIN BRADLEY, | * |
| Defendants. | * |

***

## MEMORANDUM OPINION

Plaintiff Tyrell Hill is incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland. Compl. 1, ECF No. 1. He seeks redress pursuant to 42 U.S.C. § 1983 for alleged Eighth Amendment violations by Stephen T. Moyer, Interim Secretary of Public Safety and Correctional Services, Richard Graham, Warden of WCI, and Classification Case Managers Richard Roderick and Benjamin Bradley in their individual and official capacities.[1] Compl. 1–2. Mr. Hill seeks injunctive,[2] compensatory, and punitive damages for Defendants' alleged failure to correct misinformation in his prison base file that he says has led to his improper classification and progress through the prison system as well as to him being assaulted

---

[1] Insofar as Plaintiff brings his claims against Defendants in their official, as well as individual, capacities, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–65, 70–71, n.10 (1989). A state is not "a 'person' within the meaning of 42 U.S.C. § 1983," and accordingly is not a proper defendant. *See Kelly v. Bishop*, No. RDB-16-3668, 2017 WL 2506169, at *4 (D. Md. June 9, 2017) (citing *Will*, 491 U.S. at 64–65 & 70–71). Therefore, Mr. Hill's claims against Defendants in their official capacities are dismissed. *Id.*

[2] Mr. Hill reiterated his request for injunctive relief on July 12, 2018, ECF No. 17. Because Mr. Hill based his subsequent request on the same facts as his Complaint and Amended Complaint and only against Warden Graham, this motion is also denied for the reasons stated in this opinion.

by other similarly classified inmates. Compl. 1–2, Am. Compl. 2–3, ECF No. 5. Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 11. Mr. Hill opposed the Motion, ECF No. 14. A hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Defendants' Motion, construed as a motion for summary judgment, will be granted.[3]

## Standard of Review and Evidentiary Record

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create

---

[3] Because Defendants filed a motion titled "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," along with documents in support, to which Plaintiff responded, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB–12–3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013); *Ridgell v. Astrue,* No. DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012).

2

"fair doubt." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The substantive law governing the case determines what is material. *See Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see also* Fed. R. Evid. 401 (defining relevance). "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

There is no genuine dispute of material fact if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit that "set[s] out facts that would be admissible in evidence" or other similar facts that could be "presented in a form that would be admissible in evidence" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(2), (4); *see also Ridgell,* 2012 WL 707008, at *7; *Laughlin,* 149 F.2d at 260–61.

Defendants have attached to their motion two declarations, Durst Decl., ECF No. 11-3, Neverdon Decl., ECF No. 11-12, and verified records including an email regarding the alleged assault of an officer, Shearin Email on Assault, ECF No. 11-4, the Department of Public Safety and Correctional Services' ("DPSCS") Confidential Notes, DPSCS Notes, ECF No. 11-6, Security Reclassification Instruments, Sec. Reclassification Instruments, ECF No. 11-7, Mr. Hill's Housing and Transfer History, Inmate Traffic History, ECF No. 11-5, a Serious Incident

Report, Serious Incident Report, ECF No. 11-9, and Mr. Hill's administrative remedy procedure ("ARP") filings, ARP History, ECF No. 11-11. In contrast, Mr. Hill has filed an opposition, which he attached a declaration verifying the records he submitted—mainly concerning the administrative process of this case—and his allegations are contained in an unverified complaint. Pl.'s Opp'n, ECF No. 14-1; Hill Decl., ECF No. 14-3. Because Plaintiff's Complaint is not verified, its factual assertions may not be considered in opposition to Defendants' motion and his exhibits related only to his administratively exhausting his claims. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

**Background**

On May 10, 2013, Mr. Hill, who had been housed at the Maryland Reception Diagnostic Classification Center ("MRDCC"), was transferred to North Branch Correctional Institution ("NBCI"). Inmate Traffic History 5. That same day, when Mr. Hill's transfer documentation was transmitted, an accompanying email indicated that "Detainee Hill assaulted Officer Kwame Ramsey this afternoon at MRDCC by striking the officer in the mouth with a closed fist after he baited staff into his cell with the [threat] of suicide." Shearin Email. The email added that "Inmate Hill does not suffer from suicidal ideation." *Id.* However, Mr. Hill was not charged with a rule violation. Am. Compl. 2; Defs.' Mem. 2, ECF No. 11-1.

On January 31, 2014, during a substance abuse survey, case managers asked Mr. Hill

4

about "his assault on staff" at MRDCC in 2013. DPSCS Notes 9. Mr. Hill denied that the alleged assault occurred. *Id.* The case manager referred to "[d]ocumentation on file" that described the incident. *Id.*

Within sixty days of his arrival at NBCI, Mr. Hill had to be assessed to determine if he qualified as a Maximum Level II inmate. Maximum Level II Security Bulletin 1, ECF No. 11-8. Classification as a Maximum Level II inmate is assessed according to five factors:

a. Serious assault on staff or inmate within the past five years,
b. Escape from Secure Confinement housing,
c. Incident resulting in a death of another while incarcerated,
d. Sexual assault on staff or inmate while incarcerated,
e. Verified behavior detrimental to the operation or security of a [Department of Public Safety and Correctional Services] facility . . . within the past five years.

*Id.*

On May 14, 2014, during a security review, "Hill was advised that information was received from different departments [stating] that he was considered a risk due to his detrimental behavior" and, therefore, it was recommended that his security level be increased from Maximum I to Maximum II. DPSCS Notes 8. Mr. Hill again denied the 2013 assault, stating that the staff at MRDCC "beat him up and that he did not put a hand on anyone of them." *Id.*

On May 28, 2014, Mr. Hill filed administrative remedy procedure ("ARP") form NBCI-1526-14, "requesting proof of his involvement in an alleged assault on staff." *See* ARP History, ECF No. 11-11. The ARP Office directed Mr. Hill to resubmit his ARP with a complaint, but he failed to do so. *Id.*

Mr. Hill filed four grievances from 2010 to 2016. Neverdon Decl. ¶ 3. Mr. Hill filed a complaint to the Inmate Grievance Office ("IGO"), No. 20141348 on June 9, 2014, which stated that he was improperly classified to "Max II" by NBCI Case Management staff. *Id.* ¶ 3(b). That grievance was referred to the Office of Administrative Hearings ("OAH"), where Administrative

5

Law Judge ("ALJ") Lorraine Fraser conducted a hearing on February 18, 2015. *Id.* On May 5, 2015, ALJ Fraser denied and dismissed the grievance as without merit. *Id.*

On May 5, 2015, Mr. Hill was transferred to Patuxent Institution and was transferred back to NBCI on February 12, 2016. Inmate Traffic History 2. On February 23, 2016, "Inmate Hill was seen for an out-of-schedule security review," at which time he was advised of the recommendation that he be assigned to Maximum II level security, "with a 5/2013 assault on MRDCC staff being a significant consideration." DPSCS Notes 6. It was also noted that in addition to having "a history of staff assault as a pretrial detainee," Mr. Hill was "validated" as a member of the Black Guerilla Family ("BGF") during a prior incarceration. *Id.*

A supervising case manager concurred—based on his prior "staff assault" and BGF affiliation—and recommended that testing at lower security level was warranted before approving it. Sec. Reclassification Instruments 2. Another case manager noted that two years had passed and Mr. Hill had since spent time at Patuxent Institution without incident. *Id.* As such, the second case manager believed that testing at Maximum I seemed appropriate at that time. *Id.* However, the warden approved a Maximum II classification, subject to reconsideration in six months if Mr. Hill remained infraction-free. *Id.*

On April 1, 2016, Mr. Hill was assaulted by other inmates at NBCI, resulting in 13 puncture wounds to his head, back, and arms. Compl. 3; Serious Incident Report 2. That incident resulted in Mr. Hill's placement on administrative segregation pending an investigation. Serious Incident Report 3. On April 11, 2016, Mr. Hill filed another grievance with the IGO (No. 20160474) wherein he stated that "case management staff refused to make corrections in his basefile as it applies to an alleged assault against an officer and that this information had an adverse impact on his reclassification." Neverdon Decl. ¶ 3(c). This grievance also was

6

dismissed as without merit by an ALJ. *Id.*

During Mr. Hill's May 4, 2016 segregation review, Mr. Hill expressed his frustration with being unable to participate in any programs at NBCI. DPSCS Notes 5. On August 24, 2016, Mr. Hill was reclassified to Maximum I as a result of being infraction-free for six months. *See id.* at 3; Security Reclassification Instruments 4. In November 2016, Mr. Hill was removed from administrative segregation and transferred to WCI, where he is currently classified at Maximum I. *See* Assignment Sheet 1, ECF No. 11-10; Inmate Traffic History 1.

## Analysis

### *Due Process and Protected Liberty Interest*

Mr. Hill has stated repeatedly that the information in his file regarding the assault of Officer Kwame Ramsey is false, but that it caused him to be classified as a Maximum II security level inmate, which made him ineligible for certain classes and other programs at NBCI. Compl. 2. Prisoners have a limited constitutional right, grounded in the due process clause, "to have prejudicial erroneous information expunged from prison files," and they are deprived of this right if prison officials refuse to expunge material after being requested to do so. *Paine v. Baker*, 595 F.2d 197, 202–03 (4th Cir. 1979). However, "it is not sufficient that the inmate disputes evaluations and opinions regarding him"; federal courts will not "second-guess the[se] evaluations." *Id.* The erroneous information must have been relied on "to a constitutionally significant degree" in order to state a claim. *Id.* "If the information is relied on to deny parole or statutory good-time credits, or to revoke probation or parole, the inmate's conditional liberty interest is at stake and the due process clause is called into play." *Id.* at 202 (citing *Wolff v. McDonnell,* 418 U.S. 539 (1974)). However, an allegation that false information was relied on to make "an administrative decision regarding such purely internal matters as work assignments

7

within the prison" would not be constitutionally significant. *Id*.

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). There is no constitutional right for an inmate to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life); *McKune v. Lile,* 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); *Slezak v. Evatt,* 21 F.3d 590, 594 (4th Cir. 1994) (no constitutional right to a "particular security or custody status" unless state law creates a specific limitation on the authority of correctional officials with regard to how such classifications are made); *Meachum*, 427 U.S. at 225 (holding that the due process clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"). There is likewise no constitutional entitlement to work assignments or education during incarceration. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) ("the classifications and work assignments of prisoners in such institutions are matters of prison administration, within the discretion of the prison administrators, and do not require fact-finding hearings as a prerequisite for the exercise of such discretion"). These decisions recognize that, absent circumstances inapplicable here, the correctional institutions need to maintain order and discipline, and matters of security classification are reserved to the sole discretion of prison officials. *See id.*; *Slezak,* 21 F.3d at 594; *Sandin,* 515 U.S. at 482 (stating that "federal courts

ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). The expertise of prison officials in matters of security must be given due deference. *See Sandin,* 515 U.S. at 482. Because Mr. Hill cannot show that the information in his file was a constitutionally protected liberty interest, his claims do not trigger due process. *See Meachum*, 427 U.S. at 225–29; *Sandin*, 515 U.S. at 484; *Altizer*, 569 F.2d at 813. Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

*Eighth Amendment*

To the extent that Mr. Hill alleges that Defendants failed to protect him from harm, in violation of his Eighth Amendment right to be free from cruel and unusual punishment, his claim also fails. "The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation omitted). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Raynor*, 817 F.3d at 127.

Mr. Hill alleges that because he was classified as a Maximum II security level inmate, he was housed with similarly classified inmates who assaulted him. Objectively, being assaulted by other inmates is a serious physical injury. Subjectively, however, Mr. Hill fails to establish that

the prison officials involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (citation omitted).

Mr. Hill named Defendants in the Complaint but has failed to allege any facts to support the claims against them. Mr. Hill also failed to allege that he feared for his safety while classified as Maximum II at NBCI, that he advised correctional staff of any such fear, or that Defendants were aware of a specific threat of harm to Hill at that time. The mere fact that Mr. Hill suffered harm at the hands of other inmates does not state a claim. To survive summary judgment, Hill "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 846. As he has failed to do so, Defendants cannot be found to have been indifferent to Hill's safety.[4]

---

[4] To the extent that Hill seeks "transfer to another institution," that claim is moot, as he has already been transferred to WCI. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (stating that transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).

*Supervisory Liability*

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (same). Thus, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability may attach under 42 U.S.C. § 1983 if

> (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; . . . (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate inference to or tacit authorization of the alleged offensive practices'; and (3) there was an 'affirmative causal link' between defendant's inaction and the alleged constitutional injury.

*Shaw*, 13 F.3d at 799. "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Defendant Secretary Moyer and Warden Graham only appear once in Plaintiff's original Complaint, and not in his Amended Complaint. *See* Compl. 1–2; Am. Compl. Even in his original complaint, which is no longer the operative complaint in this matter, Mr. Hill only alleges that "Stephen T. Moyer is the Interim Secretary of the State of Maryland he is legaly [sic] responsible for the operations of the Institutions in Maryland . . ." and that "Warden Richard Graham is legaly [sic] responsible for the operations of Western Correctional Institution where [he is] currently housed." Compl. 1–2. As Mr. Hill has not alleged any participation in any event by Secretary Moyer or Warden Graham or that they had knowledge of a subordinate's participation in an event and failed to respond adequately to that knowledge, they cannot be held liable under § 1983. Further, Mr. Hill has not established a constitutional injury entitling him to relief. Therefore, Secretary Moyer and Warden Graham are entitled to summary judgment. *See Vinnedge*, 550 F.2d at 928–29; *Shaw*, 13 F.3d at 799.

**Conclusion**

Mr. Hill has not demonstrated that he has a protected liberty interest in the information contained within his administrative records that had been used previously to categorize him as a Maximum Security II inmate. Further, Mr. Hill has not demonstrated that any defendant was subjectively indifferent to him which resulted in Mr. Hill being harmed. Therefore, Defendants Richard Roderick and Benjamin Bradley are entitled to summary judgment. Having failed to demonstrate a constitutional violation or any participation or failure to respond adequately as supervisors, Secretary Stephen Moyer and Warden Richard Graham are also entitled to summary judgment.[5] A separate order follows.

July 27, 2018  /S/
Date  Paul W. Grimm
  United States District Judge

---

[5] Having found for defendants on the grounds stated, I need not address their other arguments.